<div align="center">

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

</div>

**THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC. ALTERNATIVE LOAN TRUST 2007-OA4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA4**,

       Plaintiff,

v.                                        Case No.

**RYAN ATKIN**, a Florida citizen; **NOY HADAR**, a Florida citizen; **FLAMINGO/SOUTH BEACH I CONDOMINIUM ASSOCIATION, INC.**, a Florida not-for-profit corporation; **INSPIRAMAR CONSTRUCTION LLC**, a Florida limited liability company; **UNKNOWN SPOUSE OF RYAN ATKIN**; and **UNKNOWN PARTIES IN POSSESSION OF THE SUBJECT PROPERTY**,

       Defendants.

_____/

## VERIFIED COMPLAINT FOR RESIDENTIAL FORECLOSURE AND OTHER RELIEF

Plaintiff, The Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWALT, Inc. Alternative Loan Trust 2007-OA4 Mortgage Pass-Through Certificates, Series 2007-OA4 ("**Plaintiff**" or "**BONY**"), sues Defendants, Ryan Atkin, Noy Hadar, Flamingo/South Beach I Condominium Association, Inc., Inspiramar Construction LLC, Unknown Spouse of Ryan Atkin and Unknown Parties in Possession of the Subject Property, and alleges the following:

## PARTIES, JURISDICTION AND VENUE

1.      This is an action to foreclose on real property located in Miami-Dade County, Florida, rescission and for damages arising out of a claim for breach of note. The parties are of different states and the amount at issue exceeds $75,000.00, exclusive of interest, costs and attorneys' fees.

2.      BONY is a Delaware corporation. BONY maintains its headquarters and principal place of business in New York, New York.

3.      Upon information and belief, Ryan Atkin is an individual who resides in and is a citizen of Miami-Dade County, Florida.

4.      Upon information and belief, Noy Hadar is an individual who resides in and is a citizen of Broward County, Florida.

5.      Upon information and belief, Flamingo/South Beach I Condominium Association, Inc. is a Florida not-for-profit corporation with its principal place of business in Miami-Dade County, Florida.

6.      Upon information and belief, Inspiramar Construction LLC is a Florida limited liability company with its principal place of business at 11220 NE 11th Place, Biscayne Park, Miami-Dade County, Florida 33161. Upon information and believe, the sole member of Inspiramar Construction LLC is Ramon Garcia, who is a citizen of Miami-Dade County, Florida.

7.      The real property that is the subject of this action is located in Miami-Dade County, Florida.

8.      This Court possesses jurisdiction over this action under 28 U.S.C. § 1332(a) because complete diversity of citizenship exists amount the parties and because the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney's fees.

9.     Venue in the Southern District of Florida accords with 28 U.S.C. § 1391 because the real property that is the subject of this action is located in the Southern District of Florida and because all Defendants transact business, maintain a principal place of business, reside in and are domiciled in the Southern District of Florida.

10.     Every condition precedent to this action was either performed, waived, or excused.

## GENERAL ALLEGATIONS

11.     On October 20, 2006, Ryan Atkin executed and delivered to Liberty Mortgage of South Florida IX, LLC, a Florida limited liability company, an adjustable rate note (the "**Note**") in the original principal amount of $442,800.00 (the "**Loan**").  A true and correct copy of the Note, together with the Allonge to the Note endorsing the Note in blank, is attached as **Exhibit A.**

12.     The Note is secured by a Mortgage (the "**Mortgage**") dated October 20, 2006, executed by Ryan Atkin and Noy Hadar encumbering the real property commonly known as 1500 Bay Road, Unit 746, Miami Beach, FL 33139 and legally described as (the "**Property**"):

> **UNIT NO. 746S IN FLAMINGO/SOUTH BEACH I CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF RECORDED SEPTEMBER 15, 2006, IN OFFICIAL RECORDS BOOK 24914, PAGE 3803, PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA, AS AMENDED AND/OR SUPPLEMENTED FROM TIME TO TIME, TOGETHER WITH ITS UNDIVIDED SHARE IN THE COMMON ELEMENTS.**

The Mortgage was recorded on November 18, 2006, in Official Records Book 25111, Page 1267 of the Public Records of Miami-Dade County, Florida (the "**Public Records**").  A true and correct copy of the Mortgage is attached as **Exhibit B**.

13.     Ryan Atkin owns the Property.

14.     BONY is the owner and holder of the Note.

15.     NewRez is the servicer of the Loan and attorney-in-fact for BONY and is authorized to act on behalf of BONY.

16.     Ryan Atkin defaulted under the terms of the Loan by, among other things, failing to remit the payment due on October 1, 2008, and all subsequent payments.

17.     As a result of the default under the Loan, on October 10, 2023, and October 30, 2023, NewRez mailed Ryan Atkin a written notice of the default and provided an opportunity to cure the default (the "**Default Notice**").  A true and correct copy of the Default Notice is attached as **Exhibit C**.

18.     Ryan Atkin failed to cure the default within the deadline stated in the Default Notice.

19.     Because of the default, BONY hereby elects to accelerate all amounts due under the Note and Mortgage.

20.     Exclusive of accrued interest, late fees and other charges, as of October 27, 2023, Ryan Atkin owes BONY $471,260.40 in principal under the loan.

21.     BONY retained the undersigned counsel to prosecute this action and became obligated to pay reasonable attorney's fees, which fees are recoverable from under the Note and Mortgage.

## COUNT I – RESCISSION OF CANCELLED NOTE

22.     BONY realleges paragraphs 1-3, 8-11 and 14-21 above.

23.     On December 2, 2009, BONY filed an action to foreclose the Mortgage in the Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida, which was assigned Case No. 09-87096-CA-01 (the "**Prior Foreclosure**").

24.     On June 9, 2015, following a non-jury trial in the Prior Foreclosure, a final judgment of foreclosure was entered in favor of BONY (the "**Prior Judgment**").

25.     As a result of the Prior Judgment, the original Note was marked "cancelled" by the Court on June 9, 2015. *See* Ex. A.

26.     On December 9, 2015, the Prior Judgment was vacated, and the original Note was returned to BONY's counsel in the Prior Foreclosure on May 24, 2018. The Prior Foreclosure Action was voluntarily dismissed by BONY on May 31, 2019. Attached hereto as **Composite Exhibit D** are the court filings from the Prior Foreclosure evidencing the same.

27.     By virtue of the Prior Judgment being vacated, the Note was reinstated and BONY and Ryan Atkin continue to have a contractual relationship arising by virtue of the Note.

28.     However, the original Note still bears the "cancelled" stamp from the court dated June 9, 2015.

29.     The original Note is not cancelled and the "cancelled" stamp from June 9, 2015, is now erroneous and a mistake.

30.     BONY was not negligent in causing the Court to "cancel" the original Note on June 9, 2015.

31.     No party will be injured by rescinding the cancellation of the Note.

WHEREFORE, BONY respectfully requests that this Court enter an Order finding the "cancelled" stamp on the original Note to be null and void, rescinding the "cancelled" Note, reinstating the Note and for any other relief that is necessary and just.

## COUNT II - FORECLOSURE OF MORTGAGE

32.     BONY realleges paragraphs 1-21 above.

33.     Defendant Ryan Atkin may claim or have some interest in the Property by virtue of a Special Warranty Deed recorded in Official Records Book 25111, Page 1264 of the Public Records, a Quit-Claim Deed recorded in Official Records Book 26488, Page 4989 of the Public Records, and the Mortgage, but any such interest or claim is junior, inferior and subordinate to the lien of the Mortgage.

34.     Defendant Noy Hadar may claim or have some interest in the Property by virtue of the Mortgage, but any such interest or claim is junior, inferior and subordinate to the lien of the Mortgage.

35.     Defendant Flamingo/South Beach I Condominium Association, Inc. may claim or have some interest in or lien or claim upon the Property by virtue of a Declaration of Condominium recorded in Official Records Book 24914, Page 3803 of the Public Records, as amended from time to time, but any such interest, lien or claim is junior, inferior and subordinate to the lien of the Mortgage.

36.     Defendant Inspiramar Construction LLC may claim or have some interest in or lien or claim upon the Property by virtue of a Notice of Commencement recorded in Official Records Book 33578, Page 4709 of the Public Records, as amended from time to time, but any such interest, lien or claim is junior, inferior and subordinate to the lien of the Mortgage.

37.     Defendant Unknown Spouse of Ryan Atkin may claim or have some interest in or lien or claim upon the Property by virtue of a possible homestead interest, but any such interest, lien or claim is junior, inferior and subordinate to the lien of the Mortgage.

38.     Defendant Unknown Parties in Possession of the Subject Property may claim or have some interest in or lien or claim upon the Property by virtue of an unrecorded lease and/or

their status as tenant in possession of the Property, but any such interest, lien or claim is junior, inferior and subordinate to the lien of the Mortgage.

**WHEREFORE**, Plaintiff, BONY, demands judgment in its favor and against all Defendants as follows:

(a) awarding a judgment in favor of BONY for all sums owed to BONY under the Note and Mortgage, including all costs and reasonable attorneys' fees;

(b) determining that BONY holds a lien on the Property for the total sum of the debt claimed under the Note and Mortgage, which lien is superior to any claim or interest of all Defendants and all persons claiming by, through, under or against this Defendants since the filing of the Notice of Lis Pendens;

(c) directing that if the sum determined owed to BONY is not paid within the time set by this Court, that the Property be sold to satisfy BONY's claims;

(d) foreclosing the Mortgage and the interest of all Defendants and all persons claiming under or against Defendants since the filing of the Notice of Lis Pendens;

(e) awarding in the event the proceeds from the foreclosure sale are insufficient, a deficiency judgment against any Defendant responsible therefore; and

(f) directing such other and further relief as this Court deems just and appropriate, including, without limitation, rights of possession.

## <u>COUNT III - BREACH OF NOTE</u>

39. BONY realleges paragraphs 1-3, 8-11 and 14-21 above.

40. Ryan Atkin defaulted under the Note.

41.     Ryan Atkin now owes BONY the full amount of principal due under the Note of $471,260.40, plus accrued interest, late fees, attorneys' fees and other fees and costs due.

**WHEREFORE**, Plaintiff, BONY, demands judgment against Defendant, Ryan Atkin, for all amounts due under the Note, together with accrued interest thereon, late charges, attorneys' fees, and all other amounts recoverable from Ryan Atkin pursuant to the Note and Mortgage.

Respectfully submitted,

/s/ Lauren G. Raines
Lauren G. Raines, Esq.
Florida Bar No. 11896
**BRADLEY ARANT BOULT CUMMINGS LLP**
100 N. Tampa Street, Suite 2200
Tampa, FL 33602
T: (813) 559-5500 | F: (813) 229-5946
Primary email: lraines@bradley.com
Secondary email: jbrandt@bradley.com
*Counsel for Plaintiff*

## VERIFICATION TO COMPLAINT

Under penalty of perjury, I declare that I have read the foregoing Verified Complaint for Residential Foreclosure and Other Relief and the facts alleged therein are true and correct to the best of my knowledge and belief.

The Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWALT, Inc. Alternative Loan Trust 2007-OA4 Mortgage Pass-Through Certificates, Series 2007-OA4

By: NewRez LLC d/b/a Shellpoint Mortgage Servicing, its attorney-in-fact and loan servicer

By: _Jean Knowles_

Print Name: _Jean Knowles_

Title: _Senior Litigation Case Manager_

Date: _11/21/2023_

# EXHIBIT A

MIN: 1 01

Loan Number: _____

# ADJUSTABLE RATE NOTE
### (MTA-Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

OCTOBER 20, 2006                   BOCA RATON           FLORIDA
    [Date]                          [City]                [State]

   1500 BAY ROAD, UNIT 746, MIAMI BEACH, FLORIDA 33139
                       [Property Address]

## 1.   BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $742,800.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed (ONE HUNDRED FIFTEEN PERCENT ____) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is LIBERTY MORTGAGE OF SOUTH FLORIDA IX, LLC, A FLORIDA LIMITED LIABILITY COMPANY .
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST
**(A)  Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  2.500  %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B)  Interest Rate Change Dates**
The interest rate I will pay may change on the      1st      day of  DECEMBER, 2006  , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C)  Index**
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**
Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 050/1000     percentage point(s)  3.050  % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than  9.950  %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3.   PAYMENTS
**(A)  Time and Place of Payments**
I will make a payment every month.
I will make my monthly payments on the      1st      day of each month beginning on DECEMBER 1, 2006  . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 1, 2046 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 568 YAMATO ROAD SECOND FLOOR, BOCA RATON, FLORIDA 33431
or at a different place if required by the Note Holder.

CANCELLED

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $1,460.26        unless adjusted under Section 3 (F).

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st
day of DECEMBER, 2007   , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to 115.000 percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**

On the     5th        Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i)     **Interest Only Payment:**  the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)    **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii)   **15 Year Amortized Payment:**  the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.



**4.   NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the change.

**5.   BORROWER'S RIGHT TO PREPAY        ** See attached Prepayment Note Addendum.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)   Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)   No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.



**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12.  DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
RYAN ATKIN                                                -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
C[illegible] FOR MIAMI-DADE, FLORIDA,

Case No:
Plaintiff THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA4 PASS-THROUGH CERTIFICATES, SERIES 2007-OA4
Defendant: RYAN ATKIN; *et al*

Filed by the: PLAINTIFF

IDENTIFICATION as exhibit # __________

ADMITTED INTO EVIDENCE as exhibit # 1
__________ with objection __________without objection

This date: NOVEMBER 7TH, 2013
By: ______________________
PRESIDING JUDGE

## ALLONGE

LOAN #: ████████

Borrower(s):   RYAN ATKIN

Property Address:   1500 BAY ROAD, UNIT 746, MIAMI BEACH, FLORIDA 33139

Principal Balance:   $442,800.00

Loan Date:   OCTOBER 20, 2006

### PAY TO THE ORDER OF

Countrywide Bank, N.A.

**Without Recourse**

Company Name:  LIBERTY MORTGAGE OF SOUTH FLORIDA IX, LLC

By: _____                    RICHARD PHILLIPS, PRESIDENT

(Name)                                              (Title)

Pay to the order of:                          Pay to the order of:

Countrywide Home Loans, Inc.                 _____

Without Recourse                             Without Recourse
Countrywide Bank, N.A.                       Countrywide Home Loans, Inc.

By: _Laurie Meder_                           By: _Michele Sjolander_

Laurie Meder, SVP                            Michele Sjolander, EVP

Multistate Note Allonge

A.JH

# EXHIBIT B

CFN 2006R1235677
OR Bk 25111 Pgs 1267 - 1290; (24pgs)
RECORDED 11/18/2006 14:15:01
MTG DOC TAX 1,549.80
INTANG TAX 885.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This Instrument Prepared By:

*Donna Palermo*

After Recording Return To:
LIBERTY HOME LENDING, INC.
568 YAMATO ROAD SECOND FLOOR
BOCA RATON, FLORIDA 33431
Loan Number: 1001488

Record & Return to:
Felberbaum & Associate
Resource Title Co, Inc.
399 S Federal Hwy
Boca Raton, FL 33432

————————————— [Space Above This Line For Recording Data] —————————————

# MORTGAGE

**MIN:**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated   OCTOBER 20, 2006       , together with all Riders to this document.
**(B)** "**Borrower**" is  RYAN ATKIN, A SINGLE PERSON AND NOY HADAR, A SINGLE PERSON

Borrower is the mortgagor under this Security Instrument.
**(C)** "**MERS**" is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the mortgagee under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D)** "**Lender**" is  LIBERTY MORTGAGE OF SOUTH FLORIDA IX, LLC

Lender is a  FLORIDA LIMITED LIABILITY COMPANY                         organized and existing under the laws of  FLORIDA
Lender's address is  568 YAMATO ROAD SECOND FLOOR, BOCA RATON, FLORIDA 33431

**(E)** "**Note**" means the promissory note signed by Borrower and dated   OCTOBER 20, 2006
The Note states that Borrower owes Lender   FOUR HUNDRED FORTY-TWO THOUSAND EIGHT HUNDRED AND 00/100              Dollars (U.S. $ 442,800.00   ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2046         .
**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

Borrower Initials: *NH*    *RA*    _____ _____ _____ _____

(G)  **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)  **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☒ | Adjustable Rate Rider | ☐ | Planned Unit Development Rider |
| ☐ | Balloon Rider | ☐ | Biweekly Payment Rider |
| ☐ | 1-4 Family Rider | ☐ | Second Home Rider |
| ☒ | Condominium Rider | ☐ | Other(s) [specify] |

(I)  **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)  **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)  **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  **"Escrow Items"** means those items that are described in Section 3.

(M)  **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)  **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Borrower Initials:  _N.H._   _R.A._  ___  ___  ___  ___

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

| COUNTY | of | MIAMI-DADE | : |

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

which currently has the address of                   1500 BAY ROAD, UNIT 746

[Street]

MIAMI BEACH                         , Florida      33139      ("Property Address"):

[City]                                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower Initials: _NH_  _RA_  _____   _____   _____   _____

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                        Page 3 of 15                    DocMagic *eForms* 800-649-1362
                                                                      www.docmagic.com

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

Borrower  Initials: ___*NH*___   ___*RA*___   _____   _____   _____   _____

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder

Borrower Initials: _NH_   _RA_   _____   _____   _____   _____

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                                     Page 5 of 15                           DocMagic *eForms* 800-649-1362
                                                                                          www.docmagic.com

of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.

Borrower  Initials:  _NH_      _RA_      _____      _____      _____      _____

If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6.   Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   **7.   Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   **8.   Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

   **9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Borrower Initials:  *NH*        *RA*        _____        _____        _____

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share

Borrower Initials: _NH_   _RA_ _____ _____ _____ _____

of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

    (a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

    (b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

    11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

    If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

    In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

    In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

    In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

    If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower Initials: _NH_    _RA_    _____    _____    _____    _____

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Borrower Initials: _M+_   _R.A._   _____   _____   _____   _____

**15.  Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.  Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

**18.  Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

Borrower  Initials:  _NH_   _R.A._   _____   _____   _____

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.**  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized

Borrower Initials: _NH_   _R.A._   _____   _____   _____   _____

to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Borrower Initials: _NH_  _RA_  _____ _____  _____ _____  _____

DocMagic *eForms* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
RYAN ATKIN                      -Borrower
1500 BAY ROAD, UNIT 746,
MIAMI BEACH, FLORIDA 33139

_____ (Seal)
NOY HADAR                       -Borrower
1500 BAY ROAD, UNIT 746, MIAMI
BEACH, FLORIDA 33139

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

Signed, sealed and delivered in the presence of:

_____
Witness    Will Edwards

_____
Witness    Rolando Silva

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 14 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

STATE OF FLORIDA
COUNTY OF Miami-Dade

The foregoing instrument was acknowledged before me this 20th day of October 2006
by   RYAN ATKIN, NOY HADAR

who is personally known to me or who has produced   FL   DL
as identification.
                                                              (Type of Identification)

WILLIAM EDWARDS
MY COMMISSION # DD600550
EXPIRES: Oct. 1, 2010
(407) 398-0153   Florida Notary Service.com

_____
Signature

_____
Name of Notary

Notary Public.
_____
Title

(Seal)

_____
Serial Number, if any

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                    Page 15 of 15          DocMagic *eForms* 800-649-1362
                                                          www.docmagic.com

Loan Number: ███████

Date:  OCTOBER 20, 2006

Property Address:  1500 BAY ROAD, UNIT 746, MIAMI BEACH, FLORIDA 33139

### EXHIBIT "A"

### LEGAL DESCRIPTION

**Loan Number:**  ███████

Unit No. **746S** in FLAMINGO/SOUTH BEACH I CONDOMINIUM, according to the Declaration of Condominium thereof, recorded September 15, 2006, in Official Records Book 24914, at Page 3803, Public Records of Miami-Dade County, Florida, as amended and/or supplemented from time to time.

A.P.N. # : _____        _NH_  _R.A_

DocMagic eForms  800-649-1362
www.docmagic.com

MIN: ████████████████████          Loan Number: ██████████

Doc ID#:

# ADJUSTABLE RATE RIDER
## (MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this     20th     day of OCTOBER
2006               , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
LIBERTY MORTGAGE OF SOUTH FLORIDA IX, LLC, A FLORIDA LIMITED LIABILITY COMPANY
("Lender") of the same date and covering the property described in the Security Instrument and
located at:
      1500 BAY ROAD, UNIT 746, MIAMI BEACH, FLORIDA 33139
                         [Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT
THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.   INTEREST**
**(A)  Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I
will pay interest at a yearly rate of     2.500 %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 7(B) of the Note.

**(B)  Interest Rate Change Dates**
The interest rate I will pay may change on the     1st     day of DECEMBER
2006               , and on that day every month thereafter. Each date on which my interest
rate could change is called an "Interest Rate Change Date." The new rate of interest will become
effective on each Interest Rate Change Date. The interest rate may change monthly, but the
monthly payment is recalculated in accordance with Section 3.

Borrower Initials: _NH_    _RA_    _____  _____  _____  _____

**PayOption MTA ARM Rider**
**FE-5315 (0511)**                         Page 1 of 5

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 050/1000      percentage point(s)    3.050 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than    9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the   1st           day of each month beginning on DECEMBER 1, 2006 . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 1, 2046   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 568 YAMATO ROAD SECOND FLOOR, BOCA RATON, FLORIDA 33431
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,460.26          unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1st
day of DECEMBER, 2007   , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

Borrower Initials: _N̄H̄_____     _R̄.Ā._____     _____     _____     _____     _____
**PayOption MTA ARM Rider**
**FE-5315 (0511)**                           Page 2 of 5

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075.  The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)   Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to  my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN AND 000/1000 percent ( 115.000 %)of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)   Required Full Payment**

On the     5th        Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**PayOption MTA ARM Rider**
FE-5315 (0511)                                        Page 3 of 5
Borrower Initials: _NH_    _R.A._    _____    _____    _____

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

> (i)   **Interest Only Payment:**  the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
>
> (ii)   **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.
>
> (iii)   **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.   Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Borrower Initials: _NH_   _R.A_  _____   _____   _____   _____
PayOption MTA ARM Rider
FE-5315 (0511)                                   Page 4 of 5

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

RYAN ATKIN                                                        -Borrower

NOY HADAR                                                        -Borrower

_____                        -Borrower

_____                        -Borrower

PayOption MTA ARM Rider
**FE-5315 (0511)**                    Page 5 of 5

Loan Number: ████████

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 20th day of OCTOBER, 2006                ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to LIBERTY MORTGAGE OF SOUTH FLORIDA IX, LLC,
A FLORIDA LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1500 BAY ROAD, UNIT 746, MIAMI BEACH, FLORIDA 33139
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

FLAMINGO SOUTH BEACH
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv)
other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards, including,
but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for
property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property
insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy.
What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower Initials: _MH_  _RA._  _____  _____  _____  _____

MULTISTATE CONDOMINIUM RIDER
Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                                    Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.   Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.   Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.  Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.   Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.   Remedies.**  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Borrower  Initials:  _NH_   _RA_   _____   _____   _____   _____

MULTISTATE CONDOMINIUM RIDER
Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                                                    Page 2 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
RYAN ATKIN                -Borrower

_____ (Seal)
NOY HADAR                 -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

# EXHIBIT C

Shellpoint Mortgage Servicing
P.O. Box 9103
Temecula, CA  92589-9103

2383963839

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
Shellpoint Mortgage Servicing
P.O. Box 650840
Dallas, TX  75265-0840

Send Correspondence to:
Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC  29603

20231010-354

Ryan Atkin
1500 BAY RD APT 848
MIAMI BEACH, FL 33139-3224



W_FL_DEMAND



P.O. Box 10826
Greenville, SC 29603
**Phone:** 866-825-2174
**Fax:** 866-467-1187
www.shellpointmtg.com

Sent Via First-Class Mail®

10/10/2023

Ryan Atkin
1500 BAY RD APT 848
MIAMI BEACH, FL 33139-3224

Loan Number: ███████
Property Address:     1500 Bay Road #746
                     Miami Beach, FL 33139

Dear Ryan Atkin:

This letter is formal notice by Shellpoint Mortgage Servicing, the Servicer of the above-referenced loan, on behalf of THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA4, that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay amounts due.

You have a right to cure your default.  To cure the default, you must pay the full amount of the default on this loan by 11/14/2023 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter).  Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding and sale of the property.

As of the date of this notice, the total amount required to cure the default is $489,406.90, which consists of the following:

| | | |
|---|---|---|
| Next Payment Due Date: | | 10/01/2008 |
| Total Monthly Payments Due: | | $480,275.59 |
| 10/01/2008 | at | $2,342.91 |
| 11/01/2008 | at | $2,342.91 |
| 12/01/2008 | at | $2,460.64 |
| 01/01/2009 | at | $2,460.64 |
| 02/01/2009 | at | $2,460.64 |
| 03/01/2009 | at | $2,460.64 |
| 04/01/2009 | at | $2,460.64 |
| 05/01/2009 | at | $2,460.64 |
| 06/01/2009 | at | $2,460.64 |
| 07/01/2009 | at | $2,460.64 |
| 08/01/2009 | at | $2,460.64 |
| 09/01/2009 | at | $2,460.64 |
| 10/01/2009 | at | $2,460.64 |
| 11/01/2009 | at | $2,460.64 |
| 12/01/2009 | at | $2,587.20 |
| 01/01/2010 | at | $2,587.20 |
| 02/01/2010 | at | $2,587.20 |



| | | |
|---|---|---|
| 03/01/2010 | at | $2,587.20 |
| 04/01/2010 | at | $2,587.20 |
| 05/01/2010 | at | $2,587.20 |
| 06/01/2010 | at | $2,587.20 |
| 07/01/2010 | at | $2,587.20 |
| 08/01/2010 | at | $2,587.20 |
| 09/01/2010 | at | $2,587.20 |
| 10/01/2010 | at | $2,587.20 |
| 11/01/2010 | at | $2,587.20 |
| 12/01/2010 | at | $2,649.49 |
| 01/01/2011 | at | $2,649.49 |
| 02/01/2011 | at | $2,649.49 |
| 03/01/2011 | at | $2,649.49 |
| 04/01/2011 | at | $2,649.49 |
| 05/01/2011 | at | $2,649.49 |
| 06/01/2011 | at | $2,649.49 |
| 07/01/2011 | at | $2,649.49 |
| 08/01/2011 | at | $2,649.49 |
| 09/01/2011 | at | $2,649.49 |
| 10/01/2011 | at | $2,649.49 |
| 11/01/2011 | at | $2,649.49 |
| 12/01/2011 | at | $2,615.90 |
| 01/01/2012 | at | $2,615.90 |
| 02/01/2012 | at | $2,615.90 |
| 03/01/2012 | at | $2,615.90 |
| 04/01/2012 | at | $2,615.90 |
| 05/01/2012 | at | $2,615.90 |
| 06/01/2012 | at | $2,615.90 |
| 07/01/2012 | at | $2,615.90 |
| 08/01/2012 | at | $2,615.90 |
| 09/01/2012 | at | $2,615.90 |
| 10/01/2012 | at | $2,615.90 |
| 11/01/2012 | at | $2,615.90 |
| 12/01/2012 | at | $2,615.90 |
| 01/01/2013 | at | $2,615.90 |
| 02/01/2013 | at | $2,615.90 |
| 03/01/2013 | at | $2,615.90 |
| 04/01/2013 | at | $2,615.90 |
| 05/01/2013 | at | $2,615.90 |
| 06/01/2013 | at | $2,615.90 |
| 07/01/2013 | at | $2,615.90 |
| 08/01/2013 | at | $2,615.90 |
| 09/01/2013 | at | $2,615.90 |
| 10/01/2013 | at | $2,615.90 |
| 11/01/2013 | at | $2,615.90 |
| 12/01/2013 | at | $2,615.90 |
| 01/01/2014 | at | $2,615.90 |
| 02/01/2014 | at | $2,615.90 |
| 03/01/2014 | at | $2,615.90 |
| 04/01/2014 | at | $2,615.90 |
| 05/01/2014 | at | $2,615.90 |
| 06/01/2014 | at | $2,615.90 |
| 07/01/2014 | at | $2,615.90 |

| | | |
|---|---|---|
| 08/01/2014 | at | $2,615.90 |
| 09/01/2014 | at | $2,615.90 |
| 10/01/2014 | at | $2,615.90 |
| 11/01/2014 | at | $2,615.90 |
| 12/01/2014 | at | $2,583.51 |
| 01/01/2015 | at | $2,583.51 |
| 02/01/2015 | at | $2,583.51 |
| 03/01/2015 | at | $2,583.51 |
| 04/01/2015 | at | $2,583.51 |
| 05/01/2015 | at | $2,583.51 |
| 06/01/2015 | at | $2,583.51 |
| 07/01/2015 | at | $2,583.51 |
| 08/01/2015 | at | $2,583.51 |
| 09/01/2015 | at | $2,583.51 |
| 10/01/2015 | at | $2,583.51 |
| 11/01/2015 | at | $2,583.51 |
| 12/01/2015 | at | $2,614.33 |
| 01/01/2016 | at | $2,614.33 |
| 02/01/2016 | at | $2,614.33 |
| 03/01/2016 | at | $2,614.33 |
| 04/01/2016 | at | $2,614.33 |
| 05/01/2016 | at | $2,614.33 |
| 06/01/2016 | at | $2,614.33 |
| 07/01/2016 | at | $2,614.33 |
| 08/01/2016 | at | $2,614.33 |
| 09/01/2016 | at | $2,614.33 |
| 10/01/2016 | at | $2,614.33 |
| 11/01/2016 | at | $2,614.33 |
| 12/01/2016 | at | $2,705.99 |
| 01/01/2017 | at | $2,705.99 |
| 02/01/2017 | at | $2,705.99 |
| 03/01/2017 | at | $2,705.99 |
| 04/01/2017 | at | $2,705.99 |
| 05/01/2017 | at | $2,705.99 |
| 06/01/2017 | at | $2,705.99 |
| 07/01/2017 | at | $2,705.99 |
| 08/01/2017 | at | $2,705.99 |
| 09/01/2017 | at | $2,705.99 |
| 10/01/2017 | at | $2,705.99 |
| 11/01/2017 | at | $2,705.99 |
| 12/01/2017 | at | $2,797.11 |
| 01/01/2018 | at | $2,797.11 |
| 02/01/2018 | at | $2,797.11 |
| 03/01/2018 | at | $2,797.11 |
| 04/01/2018 | at | $2,797.11 |
| 05/01/2018 | at | $2,797.11 |
| 06/01/2018 | at | $2,797.11 |
| 07/01/2018 | at | $2,797.11 |
| 08/01/2018 | at | $2,797.11 |
| 09/01/2018 | at | $2,797.11 |
| 10/01/2018 | at | $2,797.11 |
| 11/01/2018 | at | $2,797.11 |
| 12/01/2018 | at | $2,948.91 |



| | | |
|---|---|---|
| 01/01/2019 | at | $2,948.91 |
| 02/01/2019 | at | $2,948.91 |
| 03/01/2019 | at | $3,091.78 |
| 04/01/2019 | at | $3,091.78 |
| 05/01/2019 | at | $3,091.78 |
| 06/01/2019 | at | $3,091.78 |
| 07/01/2019 | at | $3,091.78 |
| 08/01/2019 | at | $3,091.78 |
| 09/01/2019 | at | $3,091.78 |
| 10/01/2019 | at | $3,091.78 |
| 11/01/2019 | at | $3,091.78 |
| 12/01/2019 | at | $3,254.96 |
| 01/01/2020 | at | $3,254.96 |
| 02/01/2020 | at | $3,254.96 |
| 03/01/2020 | at | $2,964.16 |
| 04/01/2020 | at | $2,964.16 |
| 05/01/2020 | at | $2,964.16 |
| 06/01/2020 | at | $2,964.16 |
| 07/01/2020 | at | $2,964.16 |
| 08/01/2020 | at | $2,964.16 |
| 09/01/2020 | at | $2,964.16 |
| 10/01/2020 | at | $2,964.16 |
| 11/01/2020 | at | $2,964.16 |
| 12/01/2020 | at | $2,622.80 |
| 01/01/2021 | at | $2,622.80 |
| 02/01/2021 | at | $2,622.80 |
| 03/01/2021 | at | $2,622.80 |
| 04/01/2021 | at | $2,537.44 |
| 05/01/2021 | at | $2,537.44 |
| 06/01/2021 | at | $2,537.44 |
| 07/01/2021 | at | $2,537.44 |
| 08/01/2021 | at | $2,537.44 |
| 09/01/2021 | at | $2,537.44 |
| 10/01/2021 | at | $2,537.44 |
| 11/01/2021 | at | $2,537.44 |
| 12/01/2021 | at | $2,398.95 |
| 01/01/2022 | at | $2,398.95 |
| 02/01/2022 | at | $2,398.95 |
| 03/01/2022 | at | $2,392.52 |
| 04/01/2022 | at | $2,392.52 |
| 05/01/2022 | at | $2,392.52 |
| 06/01/2022 | at | $2,392.52 |
| 07/01/2022 | at | $2,392.52 |
| 08/01/2022 | at | $2,392.52 |
| 09/01/2022 | at | $2,392.52 |
| 10/01/2022 | at | $2,392.52 |
| 11/01/2022 | at | $2,392.52 |
| 12/01/2022 | at | $2,531.95 |
| 01/01/2023 | at | $2,531.95 |
| 02/01/2023 | at | $2,531.95 |
| 03/01/2023 | at | $2,550.87 |
| 04/01/2023 | at | $2,550.87 |
| 05/01/2023 | at | $2,550.87 |

| | | |
|---|---|---|
| 06/01/2023 | at | $2,550.87 |
| 07/01/2023 | at | $2,550.87 |
| 08/01/2023 | at | $2,550.87 |
| 09/01/2023 | at | $2,550.87 |
| 10/01/2023 | at | $2,550.87 |
| Late Charges: | | $1,557.06 |
| Corporate Advance Balance: | | $7,574.25 |
| Unapplied Balance: | | ($0.00) |

**TOTAL YOU MUST PAY TO CURE DEFAULT:**          **$489,406.90**

You can cure this default by making a payment of $489,406.90 by 11/14/2023. Please note any additional monthly payments, late charges and other charges that may be due under the Note, Security Instrument and applicable law after the date of this notice must also be paid to bring your account current.  You may contact our Loss Mitigation Department at 866-825-2174 to obtain updated payment information.  This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current default.  Please include your loan number and property address with your payment and send to:

Shellpoint Mortgage Servicing
P.O. Box 650840
Dallas, TX 75265-0840

Overnight:
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601

If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 866-825-2174.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, Shellpoint Mortgage Servicing offers consumer assistance programs designed to help resolve delinquencies and avoid foreclosure. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternative to foreclosure. If you would like to learn more about these programs, you may contact Cherie Shelton at 8668252174, ext. 7700, Monday - Friday 8:00AM to 9:00PM and Saturday 8:00AM to 1:00PM to discuss possible options. You may also visit our website www.shellpointmtg.com. WE ARE VERY INTERESTED IN ASSISTING YOU.

You have the right to reinstate the loan after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense to acceleration and foreclosure. If foreclosure proceedings are undertaken, we may pursue a deficiency judgment, if permitted by applicable law. Failure to respond to this letter may result in the loss of your property.

**To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.**

**Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.**

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies by Shellpoint Mortgage Servicing.



**Attention Servicemembers and Dependents:** Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of the foreclosure.  SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances.  If you are currently in the military service, or have been within the last twelve (12) months, **AND** joined after signing the Note and Security Instrument not in default, please notify Shellpoint Mortgage Servicing immediately.  When contacting Shellpoint Mortgage Servicing as to your military service, you must provide positive proof as to your military status.  Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer.  Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil, 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified housing counselors (http://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm).   You can also contact Cherie Shelton toll-free at 8668252174, ext. 7700  if you have questions about your rights under SCRA.

For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes.  To obtain a list of approved counseling agencies, please call 1-800-569-4287  or  visit  http://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.  You  may  also  contact  the Homeownership Preservation Foundation's Hope hotline at 1-888-995-HOPE (4673).

This matter is very important. Please give it your immediate attention.

Sincerely,

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603
866-825-2174

**Sara D. Accardi**
Partner
saccardi@bradley.com
813.559.5500 direct



October 30, 2023

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Ryan Atkin
1500 Bay Road, Apt. 746
Miami Beach, FL 33139

<u>**NOTICE OF DEFAULT AND RIGHT TO CURE**</u>

**RE:**     **Loan Number:**        ▮▮▮▮▮▮
            **Property Address:**   **1500 Bay Road, Apt. 746**
                                    **Miami Beach, FL 33139**

Dear Mr. Atkin,

   This firm represents Shellpoint Mortgage Servicing ("**Shellpoint**"), the servicer of the above-referenced loan, on behalf of The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2007-OA4 Mortgage Pass-Through Certificates, Series 2007-OA4.  Enclosed please find a notice of default and right to cure mailed by Shellpoint to you at your mailing address on October 10, 2023 (the "**Default Notice**"). As a courtesy, we are mailing the Default Notice to you at the address of the property securing the above-reference loan and extending deadline to cure the default referenced in the Default Notice to November 30, 2023. All other terms and conditions set forth in the Default Notice remain unchanged and are incorporated herein by reference.

   Please give this matter your immediate attention.

       Sincerely,

       *Sara Accardi*

       Sara D. Accardi

Shellpoint Mortgage Servicing
P.O. Box 9103
Temecula, CA  92589-9103

2383963839

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
Shellpoint Mortgage Servicing
P.O. Box 650840
Dallas, TX  75265-0840

Send Correspondence to:
Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC  29603

20231010-354

Ryan Atkin
1500 BAY RD APT 848
MIAMI BEACH, FL 33139-3224



W_FL_DEMAND

P.O. Box 10826
Greenville, SC 29603
**Phone:** 866-825-2174
**Fax:** 866-467-1187
www.shellpointmtg.com



Sent Via First-Class Mail®

10/10/2023

Ryan Atkin
1500 BAY RD APT 848
MIAMI BEACH, FL 33139-3224

Loan Number: ████████
Property Address:    1500 Bay Road #746
                     Miami Beach, FL 33139

Dear Ryan Atkin:

This letter is formal notice by Shellpoint Mortgage Servicing, the Servicer of the above-referenced loan, on behalf of THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA4, that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay amounts due.

You have a right to cure your default. To cure the default, you must pay the full amount of the default on this loan by 11/14/2023 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding and sale of the property.

As of the date of this notice, the total amount required to cure the default is $489,406.90, which consists of the following:

| | | |
|---|---|---|
| Next Payment Due Date: | | 10/01/2008 |
| | | |
| Total Monthly Payments Due: | | $480,275.59 |
| 10/01/2008 | at | $2,342.91 |
| 11/01/2008 | at | $2,342.91 |
| 12/01/2008 | at | $2,460.64 |
| 01/01/2009 | at | $2,460.64 |
| 02/01/2009 | at | $2,460.64 |
| 03/01/2009 | at | $2,460.64 |
| 04/01/2009 | at | $2,460.64 |
| 05/01/2009 | at | $2,460.64 |
| 06/01/2009 | at | $2,460.64 |
| 07/01/2009 | at | $2,460.64 |
| 08/01/2009 | at | $2,460.64 |
| 09/01/2009 | at | $2,460.64 |
| 10/01/2009 | at | $2,460.64 |
| 11/01/2009 | at | $2,460.64 |
| 12/01/2009 | at | $2,587.20 |
| 01/01/2010 | at | $2,587.20 |
| 02/01/2010 | at | $2,587.20 |



W_FL_DEMAND    Rev. 12/2022
Page 1 of 6

2383963839

| | | |
|---|---|---|
| 03/01/2010 | at | $2,587.20 |
| 04/01/2010 | at | $2,587.20 |
| 05/01/2010 | at | $2,587.20 |
| 06/01/2010 | at | $2,587.20 |
| 07/01/2010 | at | $2,587.20 |
| 08/01/2010 | at | $2,587.20 |
| 09/01/2010 | at | $2,587.20 |
| 10/01/2010 | at | $2,587.20 |
| 11/01/2010 | at | $2,587.20 |
| 12/01/2010 | at | $2,649.49 |
| 01/01/2011 | at | $2,649.49 |
| 02/01/2011 | at | $2,649.49 |
| 03/01/2011 | at | $2,649.49 |
| 04/01/2011 | at | $2,649.49 |
| 05/01/2011 | at | $2,649.49 |
| 06/01/2011 | at | $2,649.49 |
| 07/01/2011 | at | $2,649.49 |
| 08/01/2011 | at | $2,649.49 |
| 09/01/2011 | at | $2,649.49 |
| 10/01/2011 | at | $2,649.49 |
| 11/01/2011 | at | $2,649.49 |
| 12/01/2011 | at | $2,615.90 |
| 01/01/2012 | at | $2,615.90 |
| 02/01/2012 | at | $2,615.90 |
| 03/01/2012 | at | $2,615.90 |
| 04/01/2012 | at | $2,615.90 |
| 05/01/2012 | at | $2,615.90 |
| 06/01/2012 | at | $2,615.90 |
| 07/01/2012 | at | $2,615.90 |
| 08/01/2012 | at | $2,615.90 |
| 09/01/2012 | at | $2,615.90 |
| 10/01/2012 | at | $2,615.90 |
| 11/01/2012 | at | $2,615.90 |
| 12/01/2012 | at | $2,615.90 |
| 01/01/2013 | at | $2,615.90 |
| 02/01/2013 | at | $2,615.90 |
| 03/01/2013 | at | $2,615.90 |
| 04/01/2013 | at | $2,615.90 |
| 05/01/2013 | at | $2,615.90 |
| 06/01/2013 | at | $2,615.90 |
| 07/01/2013 | at | $2,615.90 |
| 08/01/2013 | at | $2,615.90 |
| 09/01/2013 | at | $2,615.90 |
| 10/01/2013 | at | $2,615.90 |
| 11/01/2013 | at | $2,615.90 |
| 12/01/2013 | at | $2,615.90 |
| 01/01/2014 | at | $2,615.90 |
| 02/01/2014 | at | $2,615.90 |
| 03/01/2014 | at | $2,615.90 |
| 04/01/2014 | at | $2,615.90 |
| 05/01/2014 | at | $2,615.90 |
| 06/01/2014 | at | $2,615.90 |
| 07/01/2014 | at | $2,615.90 |

| | | |
|---|---|---|
| 08/01/2014 | at | $2,615.90 |
| 09/01/2014 | at | $2,615.90 |
| 10/01/2014 | at | $2,615.90 |
| 11/01/2014 | at | $2,615.90 |
| 12/01/2014 | at | $2,583.51 |
| 01/01/2015 | at | $2,583.51 |
| 02/01/2015 | at | $2,583.51 |
| 03/01/2015 | at | $2,583.51 |
| 04/01/2015 | at | $2,583.51 |
| 05/01/2015 | at | $2,583.51 |
| 06/01/2015 | at | $2,583.51 |
| 07/01/2015 | at | $2,583.51 |
| 08/01/2015 | at | $2,583.51 |
| 09/01/2015 | at | $2,583.51 |
| 10/01/2015 | at | $2,583.51 |
| 11/01/2015 | at | $2,583.51 |
| 12/01/2015 | at | $2,614.33 |
| 01/01/2016 | at | $2,614.33 |
| 02/01/2016 | at | $2,614.33 |
| 03/01/2016 | at | $2,614.33 |
| 04/01/2016 | at | $2,614.33 |
| 05/01/2016 | at | $2,614.33 |
| 06/01/2016 | at | $2,614.33 |
| 07/01/2016 | at | $2,614.33 |
| 08/01/2016 | at | $2,614.33 |
| 09/01/2016 | at | $2,614.33 |
| 10/01/2016 | at | $2,614.33 |
| 11/01/2016 | at | $2,614.33 |
| 12/01/2016 | at | $2,705.99 |
| 01/01/2017 | at | $2,705.99 |
| 02/01/2017 | at | $2,705.99 |
| 03/01/2017 | at | $2,705.99 |
| 04/01/2017 | at | $2,705.99 |
| 05/01/2017 | at | $2,705.99 |
| 06/01/2017 | at | $2,705.99 |
| 07/01/2017 | at | $2,705.99 |
| 08/01/2017 | at | $2,705.99 |
| 09/01/2017 | at | $2,705.99 |
| 10/01/2017 | at | $2,705.99 |
| 11/01/2017 | at | $2,705.99 |
| 12/01/2017 | at | $2,797.11 |
| 01/01/2018 | at | $2,797.11 |
| 02/01/2018 | at | $2,797.11 |
| 03/01/2018 | at | $2,797.11 |
| 04/01/2018 | at | $2,797.11 |
| 05/01/2018 | at | $2,797.11 |
| 06/01/2018 | at | $2,797.11 |
| 07/01/2018 | at | $2,797.11 |
| 08/01/2018 | at | $2,797.11 |
| 09/01/2018 | at | $2,797.11 |
| 10/01/2018 | at | $2,797.11 |
| 11/01/2018 | at | $2,797.11 |
| 12/01/2018 | at | $2,948.91 |



| | | |
|---|---|---|
| 01/01/2019 | at | $2,948.91 |
| 02/01/2019 | at | $2,948.91 |
| 03/01/2019 | at | $3,091.78 |
| 04/01/2019 | at | $3,091.78 |
| 05/01/2019 | at | $3,091.78 |
| 06/01/2019 | at | $3,091.78 |
| 07/01/2019 | at | $3,091.78 |
| 08/01/2019 | at | $3,091.78 |
| 09/01/2019 | at | $3,091.78 |
| 10/01/2019 | at | $3,091.78 |
| 11/01/2019 | at | $3,091.78 |
| 12/01/2019 | at | $3,254.96 |
| 01/01/2020 | at | $3,254.96 |
| 02/01/2020 | at | $3,254.96 |
| 03/01/2020 | at | $2,964.16 |
| 04/01/2020 | at | $2,964.16 |
| 05/01/2020 | at | $2,964.16 |
| 06/01/2020 | at | $2,964.16 |
| 07/01/2020 | at | $2,964.16 |
| 08/01/2020 | at | $2,964.16 |
| 09/01/2020 | at | $2,964.16 |
| 10/01/2020 | at | $2,964.16 |
| 11/01/2020 | at | $2,964.16 |
| 12/01/2020 | at | $2,622.80 |
| 01/01/2021 | at | $2,622.80 |
| 02/01/2021 | at | $2,622.80 |
| 03/01/2021 | at | $2,622.80 |
| 04/01/2021 | at | $2,537.44 |
| 05/01/2021 | at | $2,537.44 |
| 06/01/2021 | at | $2,537.44 |
| 07/01/2021 | at | $2,537.44 |
| 08/01/2021 | at | $2,537.44 |
| 09/01/2021 | at | $2,537.44 |
| 10/01/2021 | at | $2,537.44 |
| 11/01/2021 | at | $2,537.44 |
| 12/01/2021 | at | $2,398.95 |
| 01/01/2022 | at | $2,398.95 |
| 02/01/2022 | at | $2,398.95 |
| 03/01/2022 | at | $2,392.52 |
| 04/01/2022 | at | $2,392.52 |
| 05/01/2022 | at | $2,392.52 |
| 06/01/2022 | at | $2,392.52 |
| 07/01/2022 | at | $2,392.52 |
| 08/01/2022 | at | $2,392.52 |
| 09/01/2022 | at | $2,392.52 |
| 10/01/2022 | at | $2,392.52 |
| 11/01/2022 | at | $2,392.52 |
| 12/01/2022 | at | $2,531.95 |
| 01/01/2023 | at | $2,531.95 |
| 02/01/2023 | at | $2,531.95 |
| 03/01/2023 | at | $2,550.87 |
| 04/01/2023 | at | $2,550.87 |
| 05/01/2023 | at | $2,550.87 |

| | | |
|---|---|---|
| 06/01/2023 | at | $2,550.87 |
| 07/01/2023 | at | $2,550.87 |
| 08/01/2023 | at | $2,550.87 |
| 09/01/2023 | at | $2,550.87 |
| 10/01/2023 | at | $2,550.87 |
| Late Charges: | | $1,557.06 |
| Corporate Advance Balance: | | $7,574.25 |
| Unapplied Balance: | | ($0.00) |

**TOTAL YOU MUST PAY TO CURE DEFAULT:**                    **$489,406.90**

You can cure this default by making a payment of $489,406.90 by 11/14/2023. Please note any additional monthly payments, late charges and other charges that may be due under the Note, Security Instrument and applicable law after the date of this notice must also be paid to bring your account current. You may contact our Loss Mitigation Department at 866-825-2174 to obtain updated payment information. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current default. Please include your loan number and property address with your payment and send to:

Shellpoint Mortgage Servicing
P.O. Box 650840
Dallas, TX 75265-0840

Overnight:
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601

If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 866-825-2174.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, Shellpoint Mortgage Servicing offers consumer assistance programs designed to help resolve delinquencies and avoid foreclosure. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternative to foreclosure. If you would like to learn more about these programs, you may contact Cherie Shelton at 8668252174, ext. 7700, Monday - Friday 8:00AM to 9:00PM and Saturday 8:00AM to 1:00PM to discuss possible options. You may also visit our website www.shellpointmtg.com. WE ARE VERY INTERESTED IN ASSISTING YOU.

You have the right to reinstate the loan after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense to acceleration and foreclosure. If foreclosure proceedings are undertaken, we may pursue a deficiency judgment, if permitted by applicable law. Failure to respond to this letter may result in the loss of your property.

**To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.**

**Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.**

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies by Shellpoint Mortgage Servicing.



**Attention Servicemembers and Dependents:** Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of the foreclosure.  SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances.  If you are currently in the military service, or have been within the last twelve (12) months, **AND** joined after signing the Note and Security Instrument not in default, please notify Shellpoint Mortgage Servicing immediately. When contacting Shellpoint Mortgage Servicing as to your military service, you must provide positive proof as to your military status.  Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer.  Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil,  1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified housing counselors (http://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm).    You can also contact Cherie Shelton toll-free at 8668252174, ext. 7700  if you have questions about your rights under SCRA.

For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes.  To obtain a list of approved counseling agencies, please call 1-800-569-4287  or  visit  http://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.  You may also contact the Homeownership Preservation Foundation's Hope hotline at 1-888-995-HOPE (4673).

This matter is very important. Please give it your immediate attention.

Sincerely,

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603
866-825-2174



**CERTIFIED MAIL®**

l Service
MAIL® RECEIPT
Only

USPS® ARTICLE NUMBER

| | | |
|---|---|---|
| | $ | 4.35 |
| | $ | 0.00 |
| Delivery | $ | 2.20 |
| | $ | 0.00 |
| | $ | 0.63 |
| | | 7.18 |

**Postmark Here**

Apt. 746
L 33139

**Reference Information**

le, July 2015



PITNEY BOWES
**$8.77** 0
US POSTAGE
FIRST-CLASS
026W0004897694
2000366972
ZIP 33602
OCT 30 2023

9314 8699 0430 0113 7021 54
RETURN RECEIPT (ELECTRONIC)

Ryan Atkin
1500 Bay Road, Apt. 746
Miami Beach, FL 33139

# EXHIBIT D

# FJUD

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE
COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO. 2009-87096-CA-01

THE BANK OF NEW YORK MELLON FKA THE
BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS CWALT, INC.,
ALTERNATIVE LOAN TRUST 2007-OA4
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-OA4 PASS-THROUGH CERTIFICATES,
SERIES 2007-OA4,

Plaintiff,

VS.

RYAN ATKIN; FLAMINGO/SOUTH BEACH I CONDOMINIUM ASSOCIATION, INC.; NOY HADAR;
UNKNOWN TENANT(S); IN POSSESSION OF THE SUBJECT PROPERTY N/K/A CHRISTINA
DANTES;ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER AND AGAINST
THE NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE,
WHETHER UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES,
GRANTEES, OR OTHER CLAIMANTS.

DEFENDANT(S).

_____/

This space is for recording purposes only.

## FINAL JUDGMENT OF FORECLOSURE

**THIS ACTION** was tried before this Honorable Court.   On the evidence presented, **IT IS
ORDERED ADJUDGED** that Judgment is GRANTED against the following defendants:

Ryan Atkin

Flamingo/South Beach I Condominium Association, Inc.

Noy Hadar

Unknown Tenant(s); in Possession of the Subject Property n/k/a Christina Dantes

1. **Amounts Due and Owing.** Plaintiff is due:

| Description | | Amount |
|---|---|---|
| Principal due on the note secured by the mortgage foreclosed | | $470,429.03 |
| Interest    From August 01, 2008 to June 9, 2015 | | $112,586.72 |
| Title search and Examination | | $275.00 |
| Property Tax Disbursements | | $30,573.22 |
| Year - 2014 County Tax Payment | $5,729.42 | |
| Year - 2013 County Tax Payment | $5,117.23 | |
| Year - 2012 County Tax Payment | $4,679.04 | |
| Year - 2011 County Tax Payment | $3,048.87 | |
| Year - 2010 County Tax Payment | $4,025.58 | |
| Year - 2009 County Tax Payment | $6,254.61 | |
| Year - 2008 County Tax Payment | $1,718.47 | |
| Hazard or Property Insurance Disbursements | | $5,878.13 |
| Year - 2009 Hazard/Flood Insurance | $5,878.13 | |
| Property inspection(s) | | $480.00 |
| Property Appraisal(s) | | $178.00 |
| Service of Process at  tenant inspection | | $45.00 |
| MIP/PMI Advances | | $27,630.72 |
| **SUBTOTAL** | | **$647,805.82** |

Plaintiff's Attorney's Fees:

| | |
|---|---|
| Plaintiff's Attorney's Total Non Contested Flat Rate Fee *(The requested attorney's fee is a flat rate fee that the firm's client has agreed to pay in this matter for non-contested portion of the case.  Given the amount of fee requested and the labor expended, the court finds that a lodestar analysis is not necessary for this flat fee and that a flat fee is reasonable for the non contested portion of the file.)* | **$560.00** |
| Plaintiff's Attorney's Fees based on 10 hours at $175.00 per hour and 1 hour at $200.00 per hour | **$1,950.00** |
| **Attorney's Fees Total:** | **$2,510.00** |

1e-323

<div align="center">

**GRAND TOTAL**          **$650,585.82**

</div>

(\*<u>The requested attorney's fee is a flat rate fee that the firm's client has agreed to pay in this matter.</u> <u>Given the amount of the fee requested and the labor expended, the Court finds that a lodestar</u> <u>analysis is not necessary and that the flat fee is reasonable</u>)

The adding machine tape is attached as Exhibit A.

2. **Interest.** The grand total amount referenced in Paragraph 1 shall bear interest from this date forward at the prevailing legal rate of interest, 4.75 percent a year.

3. **Lien on Property.** Plaintiff, whose address is c/o Select Portfolio Servicing, Inc., 3815 SW Temple, Salt Lake City, UT 84115 holds a lien for the grand total sum superior to all claims or estates of the defendant(s), on the following described property in Miami Dade County, Florida:

> UNIT NO. 746S IN FLAMINGO/SOUTH BEACH I CONDOMINIUM,
>
> ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF,
>
> RECORDED SEPTEMBER 15, 2006, IN OFFICIAL RECORDS BOOK 24914,
>
> AT PAGE 3803, PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA,
>
> AS AMENDED AND/OR SUPPLEMENTED FROM TIME TO TIME.
>
> TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON
>
> ELEMENTS APPURTENANT THERETO.

> Property Address: 1500 Bay Rd 746S, Miami Beach, FL 33139

4. **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 3 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on _____**JUL 2 3 2015**_____, 20___, at 9:00 A.M. to the highest bidder for cash, after first given notice as required by Section 45.031, Florida Statutes, using the following method. The subject property shall be sold by electronic sale at www.miamidade.realforeclose.com.

*FIRST AVAILABLE* *NW*

5. **Costs.** Plaintiff shall advance all subsequent required costs of this action and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for documentary stamps affixed to the certificate of title.  If Plaintiff is the purchaser, the Clerk shall credit Plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

6. **Distribution of Proceeds.**  On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the Plaintiff's costs; second, documentary stamps affixed to the Certificate;  third, Plaintiff's attorneys' fees;  fourth, the total sum due to the Plaintiff, less the items paid, plus interest at the rate prescribed in Paragraph 2 from this date to the date of the sale;  and by retaining any remaining amount pending the further order of this Court.

7. **Right of Possession.**  Upon the filing of the Certificate of Sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property except as to claims or rights under Chapter 718 or Chapter 720, Florida Statutes, if any.  Upon filing of the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the property, subject to the provisions of the "Protecting Tenants at Foreclosure Act of 2009, which was extended to December 31, 2012 by the Dodd-Frank Wall Street Reform and Consumer Protection Act.

8. Jurisdiction.  This Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments

9. **IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.**

   **IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE.  IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 W. FLAGLER STREET, ROOM 908, MIAMI, FLORIDA, TELEPHONE 305-375-5943, WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE MIAMI DADE COUNTY BAR ASSOCIATION, 123 NW FIRST AVENUE, SUITE 214, MIAMI, FLORIDA, (305) 579-5733, TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT

**THE MIAMI DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER THE RECEIPT OF THIS NOTICE.**

**10. The Final Judgment is ENTERED.**

DONE AND ORDERED in Chambers, Dade County Courthouse, Miami, Florida, this _____ day of _____, 20__.

_____
Circuit Court

JUN - 9 2015

ARTHUR L. ROTHERNBERG
SENIOR JUDGE

FINAL ORDERS AS TO ALL PARTIES
SRS DISPOSITION
NUMBER _____ 3
THE COURT DISMISSES THIS CASE AGAINST
ANY PARTY NOT LISTED IN THIS FINAL ORDER
OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
AS TO ALL PARTIES.
Judge's Initials _____

Copies furnished to all parties:

Gladstone Law Group, P.A.
1499 W. Palmetto Park Road, Suite 300
Boca Raton, FL 33486
eservice@gladstonelawgroup.com

Ryan Atkin
601 NE 36th Street, #2609
Miami, FL 33137

Bridgette Elizabeth Bonet, Esq.
Association Law Group P L
1200 Brickell Ave Ste 2000
Miami, FL 33131
bbonet@algpl.com

Noy Hadar
1500 Bay Rd #746S
Miami Beach, FL 33139

Unknown Tenant(s); in Possession of the Subject Property n/k/a Christina Dantes
1500 Bay Rd 746S
Miami Beach, FL 33139

# EXHIBIT A

```
        470,429•03  +
        112,586•72  +
              275•  +
         30,573•22  +
          5,878•13  +
              480•  +
              178•  +
               45•  +
         27,630•72  +
009°°°°°°°°°°°•
        648,075•82  *+

        648,075•82  +
          2,510•  +
002°°°°°°°°°°°•
        650,585•82  *+


        470,429•03  +
        112,586•72  +
              275•  +
         30,573•22  +
          5,878•13  +
              480•  +
              178•  +
               45•  +
         27,630•72  +
009°°°°°°°°°°°•
        648,075•82  *+


              560•  +
            1,950•  +
002°°°°°°°°°°°•
          2,510•  *+


          2,510•  +
        648,075•82  +
002°°°°°°°°°°°•
        650,585•82  *+
```

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT, IN AND FOR DADE
COUNTY, FLORIDA

CASE No. 2009-87096-CA-01

THE BANK OF NEW YORK MELLON FKA THE
BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS CWALT, INC.,
ALTERNATIVE LOAN TRUST 2007-OA4
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-OA4 PASS-THROUGH CERTIFICATES,
SERIES 2007-OA4,



                          PLAINTIFF,

VS.

RYAN ATKIN, ET AL.,

                          DEFENDANT(S).
_____/

~~SUPPLEMENTAL~~ ORDER ON PLAINTIFF'S MOTION TO VACATE FINAL JUDGMENT ~~AND~~
*Vacate* ~~CANCEL FORECLOSURE SALE SET FOR JULY 23, 2015~~

        This cause having come before the Court on Plaintiff's Motion to Vacate Final Judgment and Cancel
Foreclosure Sale set for July 23, 2015, and the Court having reviewed the pleadings and case file, and being
otherwise fully advised in the premises, it is

**ORDERED AND ADJUDGED** that the Motion is hereby:

        ✓ GRANTED. Final Judgment entered on July 9, 2015 is hereby vacated. ~~The foreclosure sale~~
~~scheduled for July 23, 2015 at 09:00 AM is hereby canceled.~~
        DENIED.

        **DONE AND ORDERED** in open Court, Dade County Courthouse, Miami, Florida, th**DEC 0 9 2015**
day of _____, 2015.

                                              _____
                                              CIRCUIT JUDGE

*Copies furnished to all parties on the attached Service List*
                                                  JORGE E. **CUETO**
                                                  CIRCUIT COURT **JUDGE**
Our Case #: 15-000067-FIH-Serengeti\2009-87096-CA-01\SPS

NONA BROWN

6/12/15 - 6/17/15 - 6/22/15 /

## REQUEST FOR ORIGINAL NOTE

Scanned
06/9/15

Current Case No _09-87096-CA_

The Original Note was previously Filed in:_____

___ Prior Case No_____

√ Current File: _09-87096-CA_

√ Date of previous filing: _6/9/15_

FILED FOR RECORD
2018 MAY 24 AM 9: 54
CLERK, CIRCUIT & COUNTY COURTS
DADE COUNTY, FLA.
CIVIL #94

The Note is requested:

√ To be in Court at _5/24/18_ (Location) on _10:00 am_ (date set/time)

___ To be released to Plaintiff Firm.

Requesting Law Firm: _Liebler Gonzalez Portuondo_

Requesting Attorney: _Peter Hernander_ Bar No _64309_

Contact Info: Email Address: _pah@lgplaw.com_

Telephone No _305-379-0400 / 786-246-4494_

```
ORIGINAL DOCUMENTS RELEASED FOR COURT DATE ON  5/24/18.
√ NOTE Cancelled ___MORTGAGE ___ ASSIGNMENT OF MORTGAGE
   LOAN MODIFICATION AGREEMENT ____OTHER
PICKED UP BY: NAME  Pete Hernander  BAR # 64309
SIGNATURE:                              DATE: 5/24/18
```

Ana Alvarado 179373

This form may be hand-delivered to the Court Clerk, or Clerk Supervisor

Dorian Mathis in the Clerk's office (305)349-7413

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION**

BANK OF NEW YORK MELLON, AS TRUSTEE             GENERAL JURISDICTION DIVISION

       **Plaintiff,**                              CASE NO.: 2009-087096-CA

vs.

RYAN ATKIN, et al.,

       **Defendant(s).**

_____

## <u>BANK OF NEW YORK MELLON'S NOTICE OF DISMISSAL</u>

       Pursuant to Fla. R. Civ. P. 1.420(a), Plaintiff Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2007-OA4 Mortgage Pass-Through Certificates, Series 2007-OA4, through counsel, hereby provides notice of dismissal without prejudice of its claims against all Defendants in this action.

                                             */s/ D. Brian O'Dell*
                                             D. Brian O'Dell (FBN: 659665)
                                             Lauren G. Raines (FBN: 11896)
                                             BRADLEY ARANT BOULT CUMMINGS LLP
                                             1819 Fifth Avenue North
                                             Birmingham, AL 35203-2104
                                             Telephone: (205) 521-8000
                                             Facsimile: (205) 521-8800
                                             bodell@bradley.com
                                             lraines@bradley.com

                                             ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2019, I served the foregoing by filing electronically with the Clerk of the Court using the Florida e-portal system which will send notification of such filing to the following counsel of record or by other means as indicated below:

Miguel M. Cordano, Esq.
Dora F. Kaufman, Esq.
Liebler Gonzalez & Portuondo
Courthouse Tower – 25th Floor
44 West Flagler Street
Miami, Florida 33130
mc@lgplaw.com
dfk@lgplaw.com

Bruce Jacobs, Esq.
Alfred I. DuPont Building
169 East Flagler Street, Suite 1640
Miami, Florida 33131
efile@bjalegal.com, jacobs@bjalegal.com

Bridgette Elizabeth Bonet, Esq.
Association Law Group PL
1200 Brickell Avenue, Suite 2000
Miami, Florida 33131
bbonet@algpl.com

Laura Carbo, Esq.
Tromberg Law Group, PA
1515 South Federal Highway, Suite 100
Boca Raton, Florida 33432
eservice@tromberglawgroup.com

Noy Hadar
1500 Bay Road #746S
Miami Beach, Florida 33139
*(via U.S. Mail)*

Unknown Tenant(s) in Possession of the Subject Property n/k/a Christine Dantes
1500 Bay Road #746S
Miami Beach, Florida 33139
*(via U.S. Mail)*

*/s/ D. Brian O'Dell*
ONE OF THE ATTORNEYS FOR PLAINTIFF